**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| DAMIAN BUNCH,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:25-cv-00561-RK |

**ORDER**

Before the Court is Plaintiff Damian Bunch's appeal brought under 42 U.S.C. § 405(g) seeking review of the Commissioner of the Social Security Administration's denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). After careful consideration and for the reasons explained below, the Court **ORDERS** that the ALJ's decision is **AFFIRMED**.

**Standard of Review**

The Court's review of the ALJ's decision denying Plaintiff's protective applications for social security benefits is limited to whether the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). Put another way, the Court "will affirm if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole." *Cropper v. Dudek*, 136 F.4th 809, 813 (8th Cir. 2025) (internal quotation marks omitted).

An ALJ's "failure to comply with [Social Security Act] regulations . . . is [reversible] legal error." *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). To determine whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (internal quotation marks omitted). "If the ALJ's decision is supported by substantial evidence,

[the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis*, 239 F.3d at 966). On judicial review of the ALJ's decision, the Court does not "re-weigh the evidence presented to the ALJ," *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)), and must "defer heavily to the findings and conclusions of the [ALJ]," *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).

**The Five Step Sequential Analysis for Disability Benefits**

To determine whether a claimant is entitled to benefits under the Social Security Act, the ALJ utilizes a familiar five-step analysis found at 20 C.F.R. §§ 404.1520(a) & 416.920(a), as follows:

At Step One the ALJ considers whether the claimant is engaged in substantial gainful work activity. If not, the ALJ moves to Steps Two and Three to consider whether the claimant has a severe medically determinable physical or mental impairment, or a combination thereof (Step Two), and whether any such impairments meet or are medically equivalent to a Listed Impairment found at 20 CFR Pt. 404, Subpt. P, App. 1 (Step Three). If the ALJ finds that a claimant's impairments, individually or in combination, meet or medically equal a Listed Impairment, the claimant is entitled to disability benefits. Otherwise, the ALJ moves to Step Four of the analysis to assess and consider the claimant's residual functional capacity ("RFC")[1] and to determine whether the claimant can still do any past relevant work considering the claimant's RFC as assessed by the ALJ. In doing so, the ALJ is required to consider the persuasiveness of medical opinions and prior administrative medical findings. *See* 20 C.F.R. §§ 404.1520c & 416.920c. If the ALJ finds that the claimant can perform past relevant work given the ALJ's RFC determination, the claimant is not entitled to benefits. However, if the claimant is unable to perform past relevant work given their assessed RFC, the ALJ finally considers at Step Five whether the claimant can do other work that exists in significant numbers in the national economy considering the claimant's

[1] A claimant's RFC "is the most [the claimant] can do" despite any "physical and mental limitations that affect what [the claimant] can do in a work setting" caused by a claimant's impairment(s) and related symptoms. 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). The ALJ's RFC assessment must be based on "all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (internal quotation marks omitted). Although it is a medical question and must be based on some medical evidence, "it is ultimately an administrative determination" for the ALJ. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

RFC, alongside their age, education, and work experience, and the corresponding testimony of a vocational expert. If the ALJ determines that the claimant cannot do so, the claimant is entitled to disability benefits.

**Discussion**

By way of overview, the ALJ found that Plaintiff has the following severe impairments: history of myocardial infarction; obstructive sleep apnea; history of right knee surgery; coronary artery disease status-post arterial dissection; left ankle osteoarthritis; left glenohumeral joint osteoarthritis; mild cervical spondylosis; mild thoracic spine degeneration; depressive disorder; anxiety disorder; and post-traumatic stress disorder.[2] However, the ALJ found that none of Plaintiff's impairments, whether considered alone or in combination, meet or medically equal the criteria of one of the Listed Impairments.

Additionally, the ALJ found that despite his limitations, Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(a). Plaintiff can occasionally climb, balance, stoop, kneel, crouch, and crawl. He can occasionally climb stairs and ramps. He cannot climb ladders, ropes or scaffolds. He can have no concentrated exposure to temperature extremes, vibration, or work hazards, and he cannot use foot controls. He can occasionally reach overhead with the left upper extremity. He cannot repetitively grip. He can frequently, but not constantly, finger, feel, and handle with the bilateral upper extremities. He can understand, remember and carry out simple instructions. He cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly production quotas. He can occasionally interact with coworkers and supervisors, but he cannot interact with the public in the performance of job duties. He can tolerate occasional changes in a routine work setting. The ALJ found that Plaintiff has no past relevant work and that he could perform other work that exists in significant numbers in the national economy of Electrical Assembler, Inspector Packer, and Small Products Assembler.

---

[2] As to non-severe impairments, the ALJ found:

> Because there is no objective medical evidence to support that the alleged migraine headaches, upper cross syndrome, costochondritis as well as documented obesity, hypertension, hemorrhoids, and trigger fingers or any other physical impairment, to the extent they have been diagnosed by an acceptable medical source and not otherwise defined above as "severe," have no more than a minimal effect on the claimant's ability to perform basic work activities, they are considered non-severe impairments.

(Tr. 19.) The non-severe impairment finding is not at issue in this appeal.

On appeal, Plaintiff claims two errors in the ALJ's decision: (1) the ALJ failed to base the RFC on medical opinion evidence of Plaintiff's ability to function in the workplace; and (2) substantial evidence does not support the ALJ's determination at Step Five that jobs existed which Plaintiff can performed.

**Point 1: Whether the ALJ erred as a matter of law by formulating the RFC after rejecting the consultant medical opinions**

In his first point, Plaintiff claims that the ALJ's formulation of the RFC was erroneous and she failed to fully develop the record.

It is well established that the ALJ's evaluation of a claimant's RFC should be "based on all the evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002) (internal quotation marks omitted). A claimant's RFC is a "medical question," and the ALJ's assessment must therefore "be supported by some medical evidence," although "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (internal quotation marks omitted).

Administrative social security proceedings are non-adversarial; therefore, "the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (internal citation omitted). "The ALJ cannot render an opinion if a 'crucial issue [is] undeveloped,' but the ALJ has no duty to seek clarification of medical opinions if the record contains other detailed clinical evidence of the claimant's limitations." *Bonham v. Bisignano*, 177 F.4th 934, 940-41 (8th Cir. 2026) (quoting *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)). "[T]he burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (internal citation omitted).

On August 31, 2023, Plaintiff filed a protective application under Title II of the Social Security Act for disability and disability insurance benefits alleging disability beginning October 8, 2020. The claim was denied initially on February 5, 2024, and upon reconsideration on July 10, 2024. Following a hearing, the ALJ issued an unfavorable decision, concluding that Plaintiff was not disabled through December 31, 2022, the date last insured.

The ALJ considered four consulting medical professionals' opinions (two medical consultants and two psychological consultants) made at the state disability services initial and reconsideration levels, all four of which found insufficient evidence to establish the presence of a

disability prior to December 31, 2022, and therefore, insufficient evidence to make an RFC determination. The state agency medical consultants at both the initial and reconsideration level specifically noted the lack of functional information for the period of disability. (Tr. at 98-99, 107.) This is unsurprising because, as the ALJ noted in the written decision, Plaintiff failed to support his claim by submitting the required adult function report Form SSA-3373 which would have provided information on his activities of daily living as well as social and cognitive functioning. The ALJ found the prior administrative findings (of insufficient evidence) unpersuasive because there was evidence in the record which showed that Plaintiff had the RFC for light work with some additional limitations noted.

Plaintiff argues that it was legal error for the ALJ to construct an RFC because the four state agency consultants found there was insufficient evidence to evaluate Plaintiff's disability claim. Plaintiff contends that the ALJ was instead required to develop the record further by ordering a consultative examination to assess Plaintiff's ability to function in the workplace.

Plaintiff's sole support lies in *Combs v. Berryhill*, 878 F.3d 642 (8th Cir. 2017). However, Plaintiff fails to explain how this case supports his assertion that the ALJ erred by formulating the RFC.[3] *Combs* is readily distinguishable. There, the ALJ was presented with two reviewing physicians' opinions which conflicted as to the claimant's ability to function in the workplace. In determining the relative weight to assign the opinions, the ALJ improperly relied on his own inferences as to the relevance of two notations in the medical records. The ALJ based its finding that the claimant's subjective complaints of pain were not entirely credible in large part based on the notations (and his inferences thereof).

Plaintiff does not argue that the ALJ's RFC determination was incorrect; rather, he argues only that the ALJ could not construct *any* RFC because the state agency consultants found that the same record lacked sufficient evidence to do so. Plaintiff's argument lacks any basis in the law. An ALJ is permitted to disagree with the state agency consultant's determination that the record lacked sufficient evidence to evaluate a claim. *See Bonham*, 177 F.4th at 938, 942 (affirming

[3] Moreover, Plaintiff's brief is exceedingly bare in this respect—he identifies the general rule that an ALJ "may not simply draw his own inferences about plaintiff's functional ability from medical reports," and he goes on to state, "If the *Combs* ALJ erred, then the ALJ here must surely have erred." (Doc. 11 at 11.) Even if the Court generously construed Plaintiff's argument as asserting that the ALJ improperly drew her own inferences while constructing the RFC, Plaintiff fails to identify any improper inferences that he believes the ALJ relied upon, let alone any areas of the RFC which are not properly supported by objective medical evidence.

ALJ's RFC determination based on medical evidence about the claimant's ability to function in the workplace where the ALJ rejected the only medical opinion and two consulting physicians found insufficient evidence to render an opinion regarding functional abilities); *Lerchaichanakul v. Kijakazi*, No. 4:22-CV-1002 SRW, 2023 WL 5128207, at *6 (E.D. Mo. Aug. 10, 2023) ("An ALJ may disagree with a State Agent consultant that there was insufficient evidence to rate a claimant's limitations and, instead, find the existing record was sufficient to determine the severity of Plaintiff's impairments.").

Insofar as Plaintiff suggests that the ALJ erred by constructing an RFC in the absence of a medical opinion to support it, no such categorical rule exists. *See Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) (affirming RFC without medical opinion evidence). The Eighth Circuit recently reiterated this point while rejecting an argument similar to Plaintiff's in *Bonham v. Bisignano*. At the prior administrative level, two consulting doctors reviewed Bonham's medical records and found insufficient evidence to render an opinion about his functional abilities. In addition, a physician associate performed a physical examination and opined that Bonham was unable to use his left arm, an opinion which the ALJ found unpersuasive as it was not consistent with the other substantial evidence in the record. Thus, the ALJ rejected "the only medical opinion in the record that spoke to the claimant's ability to function in the workplace." 177 F.4th at 940.

On appeal, Bonham argued that the ALJ violated her duty to develop the record in creating an RFC based on "non-functional medical reports and clinical findings that did not assess his functional ability." *Id.* Bonham asserted that an RFC determination must be based on a medical professional's opinion regarding a claimant's ability to function in the workplace rather than based upon "objective medical data (e.g., clinical examinations, diagnostic imaging)." *Id.* at 941. The Eighth Circuit disagreed, holding that "there is no requirement that an RFC finding be supported by a specific medical opinion," and affirmed that an RFC "may be based on reliable objective medical data such as clinical examinations and diagnostic imaging and need not include a medical professional's opinion regarding the claimant's functionality." *Id.*

The Court is satisfied that the RFC determination was properly supported by reliable medical evidence about Plaintiff's ability to function in the workplace, including routine physician progress notes, clinical notes detailing physical exams, and CT imaging. (Tr. at 23-24.)

The ALJ noted that Plaintiff alleged disability due to anxiety and depression. Plaintiff testified at the hearing to his present symptoms, including migraines, back muscle spasms,

tightness in his legs and chest, sleep difficulties, fatigue and irritability, anxiety, depression, flashbacks, and pain flares which require him to lie down for ten minutes. (*See* Tr. 22-23.) The ALJ found that Plaintiff's medically determinable impairments could have reasonably been expected to produce some of Plaintiff's alleged symptoms but that the objective medical evidence and other evidence in the record did not support Plaintiff's statements concerning the alleged intensity, persistence, and limiting effects of the symptoms or an inability to function during the relevant time period.

In evaluating Plaintiff's statements regarding the limiting effects of his impairments, the ALJ discussed Plaintiff's medical records that indicated generally normal, unremarkable, and moderate findings. At January 2021 and 2022 annual cardiology follow-up appointments, Plaintiff felt well and was without any active cardiovascular symptoms; his weight was trending in a positive direction. (Tr. 2206, 2196.) Cardiology progress notes were consistently unremarkable through March 2023. (Tr. 2173, 2175.) Plaintiff's pulmonary status was stable in August 2021. (Tr. 842.) Medical records indicated that Plaintiff received chiropractic treatment from May through December 2022 for reported aches in his lower back and neck as well as shoulder pain, which Plaintiff reported feeling relief from after care but stated that his pain returned with general activity. (Tr. 1953.) However, clinical notes from January 2021 to March 2023 indicate Plaintiff's normal range of motion, including in the cervical back. (Tr. 2175, 2194, 2208.) Finally, in February 2023, Plaintiff visited the emergency room because he passed out after an incident with his five-year-old son; however, Plaintiff denied any other cardiovascular symptoms and a CT scan of his cervical spine showed only mild disc degeneration. (Tr. 1129.) Additionally, as to Plaintiff's mental status, the ALJ cited treatment records establishing intermittent mental health follow-up and participation with treatment, some noncompliance with medication, and unremarkable psychiatric mental status examinations from September 2020 through December 2022. (Tr. 789, 802, 817, 823, 824, 828, 857, 863, 878.)

To the extent that Plaintiff argues that the ALJ failed to develop the record, he has not carried his burden to show that a crucial issue was undeveloped, or that a failure to develop the record further was prejudicial. *See Bonham*, 177 F.4th at 942. In fact, excluding Plaintiff's point that the state agency consultants found insufficient evidence to evaluate Plaintiff's claim, he does not set forth any argument regarding how the record was inadequately developed. Not only does Plaintiff completely ignore the ample relevant evidence cited by the ALJ, Plaintiff faults "the ALJ

for not requiring him to undergo a consultative examination despite his failure to submit a function report." *Campbell v. Kijakazi*, No. 1:22-CV-00013-JAR, 2023 WL 2139217, at *7 (E.D. Mo. Feb. 21, 2023). Plaintiff's "failure to provide medical evidence should not be held against the ALJ when there is medical evidence that supports the ALJ's decision." *Id.* (citing *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008)).

The Court discerns no reversible error here in the RFC determination as supported by medical evidence; the ALJ did not improperly substitute her expertise and was not required to obtain additional evidence on this record.

Point One is denied.

**Point Two: Whether substantial evidence supports the ALJ's Step Five determination**

In addition, Plaintiff argues in Point Two that the ALJ's determination at Step Five that Plaintiff can make an adjustment to other work is not supported by substantial evidence.

A Social Security claimant generally bears the burden of demonstrating that she is disabled. However, at Step Five, the burden shifts to the Commissioner "to show that a significant number of appropriate jobs exist for the claimant." *Boyd v. Colvin*, 831 F.3d 1015, 1021 (8th Cir. 2016) (internal quotation marks omitted). "The Commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to meet her burden of showing that jobs exist in significant numbers which a person with the claimant's residual functional capacity can perform." *Gann v. Berryhill*, 864 F.3d 947, 952 (8th Cir. 2017) (internal quotation marks omitted).

At Step Five, the ALJ considered—given Plaintiff's RFC, age, education, and work experience—whether Plaintiff could make an adjustment to other work and whether any other work exists in significant numbers in the national economy that Plaintiff can perform. *See* 20 C.F.R. § 416.960, *et seq.*; *id.* § 416.966 ("Work exists in the national economy when there is a significant number of jobs . . . having requirements which you are able to meet with your physical or mental abilities and vocational qualifications."). At the hearing, the ALJ presented the vocational expert with a hypothetical individual with an RFC matching Plaintiff's, including the limitation that the "individual could occasionally reach overhead with the left upper extremity." (Tr. 54.) The vocational expert, or VE, testified that such an individual could perform the following job titles: (1) "Small Products Assembler I, [Dictionary of Occupational Titles ("DOT") 706.684-

022]"[4]; (2) "Electrical Accessories Assembler, DOT 729.687-010"; and (3) "Inspector Packer, DOT 559.687-074." (*Id.* at 54-55.) The ALJ accepted the vocational expert's testimony, relied on it in the unfavorable decision, and determined that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and is therefore not entitled to social security benefits.

Plaintiff points out that according to the DOT's companion publication, the Selected Characteristics of Occupations, all three of the jobs which the ALJ found Plaintiff could do require frequent reaching, despite his limitation in the RFC (and the ALJ's hypothetical) that he can only occasionally reach overhead with his left upper extremity. Plaintiff argues that because the ALJ failed to resolve this "apparent conflict" between the vocational expert's testimony and the DOT, the ALJ's Step Five determination is not supported by substantial evidence.

Plaintiff relies on now-rescinded Social Security Ruling ("SSR") 00-4p, which required ALJs to resolve conflicts between a vocational expert's occupational evidence and information in the DOT before relying on the vocational expert's testimony. *See also Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014) (relying on SSR 00-4p in holding where "there is an 'apparent unresolved conflict' between VE testimony and the DOT, the ALJ must 'elicit a reasonable explanation for the conflict' and 'resolve the conflict by determining if the explanation given [by the expert] provides a basis for relying on the [VE] testimony rather than on the DOT information'"). However, in no uncertain terms, the Social Security Administration ("SSA") rescinded that requirement when it promulgated SSR 24-3p. SSR 24-3p, 89 Fed. Reg. 97158, 97159 (Dec. 6, 2024) ("We are rescinding SSR 00-04p and will no longer require our adjudicators to identify and resolve conflicts between occupational information provided by VSs and VEs and information in the DOT."). SSR 24-3p went into effect on January 6, 2025, and states, "Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions." The ALJ's decision in this matter was issued on February 3, 2025; therefore, SSR 24-3p (and not SSR 00-4p) applies to the ALJ's decision.

Plaintiff acknowledges the recission of SSR 00-4p for the first time in his reply brief. Plaintiff does not argue that the vocational expert's testimony failed to comply with SSR 24-3p.

[4] As Plaintiff points out, the ALJ and vocational expert appear to have referred to the wrong DOT code for the Small Products Assembler I job in the hearing testimony and unfavorable decision. The DOT code for Small Products Assembler I is 706.684-022.

Instead, Plaintiff appears to argue that because the vocational expert's testimony referred to jobs using DOT job codes, yet her opinion conflicted with the DOT's reaching requirement for those jobs, the testimony cannot provide the substantial evidence needed to support the ALJ's Step Five determination. Plaintiff's argument ignores that the vocational expert may rely, and in this case did rely, on sources of occupational information other than the DOT. Per SSR 24-3p, the SSA continues to recognize the DOT as a valid and reliable source of occupational information, but the SSA permits vocational experts to "provide evidence based on their professional experience and any reliable source of occupational information that is commonly used in the vocational profession and relevant under" SSA rules.[5] 89 Fed. Reg. at 97160.

Plaintiff presumes that the vocational expert used the non-exertional limitations provided by the DOT in reaching her conclusion. However, the vocational expert testified that she utilized the DOT, SkillTRAN, the Bureau of Labor and Statistics, her "own labor market surveys as well as the information provided by other vocational experts," and "something akin [to cross logs which looks] at the different jobs that would be matching and comparable within [the] hypothetical." (Tr. 55.) Moreover, the vocational expert testified that she "look[s] at the DOT description" and bases her "opinion on [her] education and experience and the thousands of jobs [she has] watched being performed and placed individuals in in the past 25 years." (*Id.*) The fact that the vocational expert utilized the DOT (in part) does not mean that she relied upon the reaching requirement provided for in the DOT.

"The DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities. In other words,

---

[5] In the purpose statement of SSR 24-3p, the SSA explained:

> We continue to recognize the DOT as a valid and reliable source of occupational information, and we will continue to use it in adjudication. However, we acknowledge that the DOT is not the only reliable source of occupational information. We note that recent federal statistical data relating to work in the national economy uses the Standard Occupational Classification (SOC) system and that the SOC system for classifying occupations is different from that of the DOT. The requirements of SSR 00-4p make it difficult to use these other sources, because it is not clear how a VS, VE or adjudicator can fulfill the requirement to identify and resolve conflicts with the DOT when primarily using a data source that is, structurally, very different from the DOT. We do not want to discourage use of occupational information that is reliable and commonly used in the vocational profession.

89 Fed. Reg. at 97159 (internal footnote omitted).

not all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT." *Jones v. Astrue*, 619 F.3d 963, 978 (8th Cir. 2010) (internal quotation marks omitted) ("[N]ot all of the jobs in every category have requirements identical to or as rigorous as those listed in the [DOT]."). It's apparent from the vocational expert's testimony that she utilized one of the other sources identified to determine that the three jobs at most required occasional overhead reaching with the upper left extremity. This approach was consistent with SSR 24-3p, which provides that vocational experts "may use a combination of [reliable] sources when providing occupational evidence" and "may cite to multiple acceptable sources of occupational data that do not precisely correspond to each other." 89 Fed. Reg. at 97160 (requiring explanation only in certain circumstances, such as if the vocational expert "uses a data source that defines exertion, education, or skill levels differently than" SSA regulations or if the sources utilized use different classification systems).[6] Accordingly, the ALJ accepted the vocational expert's testimony "in accordance with SSR 24-3p." (Tr. 26.) On this record, the Court is satisfied that substantial evidence supports the ALJ's determination at Step Five that Plaintiff can make an adjustment to other work.

Point Two is denied.

## Conclusion

Accordingly, after careful consideration and review of the record before the Court and the parties' submissions on appeal, the Court **ORDERS** that the ALJ's decision is **AFFIRMED**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: September 28, 2026

[6] Plaintiff concedes these circumstances are not at issue here.